*191
 
 Pearson, J.
 

 In December 1846, the defendant, Herring, executed a contract in writing in these words, “ Rec’d. of John L. Kitchen payment in full for a certain tract of land lying on the South west side of Black River, adjoining the lands of William Haffland and Martial, for which I am to give him a good deed
 
 &c.!i
 
 The defendant Pridgen wrote the contract and is a subscribing- witness. The plaintiff was put into possession in March 1847. Pridgen united with him ; and the other defendant, Musgrove, under a contract with Pridgen, with a large number of hands, commenced cutting down the timber, which constitutes the chief value of the land. Pridgen was the surety of the plaintiff to a note of $325, given payable at three months for the price of the land. In January, Herring executed a deed for the land to Pridgen, and under this title the plaintiff was turned out of possession.
 

 The prayer of the Bill is for a specific performance, for an account of the profits and for an injunction. After the Bill was filed, an arrangement was made, by which Mus-grove continued his operations in getting timber, and agreed to account with the successful party. ''The/defendants, Herring and Pridgen, allége, that the'note was to bear interest from the date, and this clause was omitted by mistake ; and that there was an entire mistake in drawing the contract, for that the title was to be made to Pridgen, and not to the plaintiff. They further allege, that the contract was rescinded by mutual consent. These allegations are not sustained by the proof. In regard to the interest — the plaintiff at the time he tendered the amount of the note and demanded a deed, offered to pay interest for the three months, but there is not such an admission of his obligation to pay the interest, as will justify a departure from the terms of the note. The offer was obviously made to avoid litigation, to buy his peace, and there is no proof of a mistake.
 

 
 *192
 
 The defendant’s Counsel
 
 insisted,
 
 that the contract was void, because of its vagueness and uncertainty. This position is untenable. The description is sufficiently certain to identify the laud — “that is certain which can be made certain,” and for this purpose an enquiry would be ordered if necessary. But the parties seem to have had no difficulty in this respect; for, it is admitted, that tho tract of land which was tho subject of the contract, has been eonvejred by deed to Pridgen, and in that way its identity is eslablish-ed. The description in this contract is similar to that "constantly made by constables in levies upon land, front “which sheriffs have no difficulty ds to what land to sell, •and how to make the deeds.
 

 It was further insisted, that, as it appears by the plain-* tiffs own showing, that “ the laud isf chiefly valuable on account of tho timber,” this case does not come within the principle, on which a specific performance is decreed.
 

 The position is new, and tho Counsel admitted, that there was no authority to sustain it, but he contended with earnestness, that it was so fully sustained by “the reason of the tiling,” as to justify a departure from a well settled rule of this Court, under the maxim,
 
 cessante ratione ccssat lex.
 

 The argument failed wholly to prove, that “ the reason of tho thing” called for an exception,
 
 /the
 
 principle in regard to land was adopted, not because it was fertile or rich in minerals, or
 
 valuable for timber,
 
 but simply because it was
 
 land
 
 — a favorite and' favored subject in England, and every country of Anglo Saxon origin. Our constitution gives to land pre-eminence over every other species of property; and our law, whether administered in Courts of law or of equity, gives to it the same preference. Land, whether rich or poor, cannot be taken
 
 to
 
 pay debts until the persona] property is exhausted. Contracts concerning land must- be in writing. Land must be sold at the Court House, must be conveyed by deeds duly registered, and .other instances “ too tedious to mention.”
 
 fthe
 
 principle
 
 *193
 
 is, that land is
 
 assumed
 
 to have a peculiar value, so as to give an equity for a specific performance, without reference' to its quality or quantity. The same is assumed as to slaves,
 
 Williams
 
 v
 
 Howard,
 
 3 Murph. 74, while in regard to other property, less favored, a specific performance will not be decreed, unless there be peculiar circumstances ; for, if with the money, an article of the same description can be bought in market — corn, cotton, dec., the remedy at Jaw is adequate.
 

 There must be adecree for the plaintiff with costs.
 

 Per CuRrAM. Decree accordingly.