WHITTED v. FUQUAY.

(October 23, 1900.)

1. *Verdict—Setting Aside—Weight of Evidence—Superior Court—Supreme Court—Trial.*

> The trial judge has the right to set aside a verdict as against the weight of evidence. The Supreme Court has no such power.

2. *Verdict—Evidence—Sufficiency.*

> The Supreme Court can go no farther than to say whether there is any evidence upon which the jury might reasonably have found the verdict.

3. *Specific Performance—Defenses—Contract.*

> The fact that a party had made a bad trade does not relieve him from the specific performance of his contract.

4. *Specific Performance—Contracts—Questions for Jury— Questions for Court.*

> In a suit to compel specific performance, whether a contract is inequitable is not a question for jury but for the Court, and the jury can only find the facts.

5. *Notice—Fraud—Specific Performance.*

> When a party is put upon inquiry, he is presumed to have notice of every fact which a proper examination would enable him to find out.

CIVIL ACTION by W. A. Whitted and W. W. Whitted against A. P. Fuquay and T. B. Crowder, heard by Judge W. A. Hoke and a jury, at Spring Term, 1900, of WAKE Superior Court. From judgment for plaintiffs, defendants appealed.

*Winston & Fuller* and *H. E. Norris,* for plaintiffs.
*Argo & Snow* and *Shepherd & Shepherd,* for defendants.

FURCHES, J.   This is an action upon an alleged contract
for the sale of land in which a specific performance is de-
manded.   The relief prayed for was refused, and plaintiffs
appealed to this Court.   There were two issues submitted
to the jury, upon which they passed:   (1) Did the defend-
ant, A. P. Fuquay, contract and agree in writing to convey to
plaintiffs the lands described in complaint at the price of
$1,000, as of date 19th November, 1898, reserving one acre
near spring?.   Ans. Yes.   (2) Would the specific enforce-
ment of such contract be oppressive and inequitable? · Ans.
Yes."   There were other issues submitted, but they were not
passed upon by the jury."

Upon the argument before this Court, the defendant in-
sisted that the evidence submitted did not constitute a con-
tract for the sale of land, as contended by the plaintiffs; and,
while this issue was found against the defendant, the judg-
ment was in his favor, and he did not appeal.   We mention
these facts for the purpose of stating that the ruling of the
Court on this issue is not before us on this appeal, and there-
fore is not considered.

The only matter before us is upon the evidence, ruling and
judgment of the Court upon the second issue.   The specific
performance of a contract for the sale of land is an equitable
relief, not demandable as a matter of absolute right, but a
right that rests in the sound judicial discretion of the Court.
*Lloyd v. Wheatley,* 55 N. C., 269; *Ramsay v. Gheen,* 99 N.
C., 215.   But where a valid legal contract is established,
which possesses no objectionable features to prevent its spe-
cific execution, and no fraud appears as an inducement to
making the same, the Court will, as a matter of course, de-
cree a specific performance.   3 Pom. Eq. Jur., sec. 1402;
*Stamper v. Stamper,* 121 N. C., 251; *Bryson v. Peak,* 43
N. C., 310; *Kitchen v. Herring,* 42 N. C., 190.   The doc-

trine is well understood by the profession, and more easily
stated than applied.  The doctrine of specific performance
is the same now as before The Code practice was adopted.
It is still equitable in its nature, but administered in a Court
having jurisdiction of both legal and equitable demands.
But while the principle governing in actions for specific per-
formance is the same, the mode of trial is changed, to some
extent at least.   Under the old equity practice, the Court
found the facts shown by the evidence, and in this way en-
lightened its conscience and enabled it to pronounce its judg-
ment.   It might, *ex mero motu,* formulate issues, and send
them to a Court of Law to be tried by a jury, and certified
back to the Court of Equity.   But the Court of Equity had
the right to disregard the findings of the jury if it saw proper
to do so, and proceed to find the facts.   But, under the Con-
stitution of 1868 and The Code, either party has the right to
have the issues of fact arising upon the pleadings found by
the jury, unless they expressly waive this right.   And, as
this is now a constitutional right the parties have, we do not
suppose the Court, though passing upon an equitable de-
mand, would be at liberty to disregard the findings of the
jury, as it might have done under the old practice.   But the
Court would have the right to set aside the verdict, if it
thought it contrary to the weight of evidence, and to order a
new trial.   And, while the trial judge has the right to set
aside the verdict as against the weight of evidence, this Court
has no such right.   The furthest it can go is to say whether
there is any evidence upon which the jury might have reason-
ably found the verdict it did.   It is contended by the plain-
tiffs that there was no such evidence in this case that au-
thorized the finding of the jury upon the second issue, and
this is one of the questions by this appeal for our considera-
tion.   Another is as to whether the facts found by the jury

are sufficient to justify the judgment of the Court in refusing·
the demand of the plaintiffs for a specific performance of the
contract.

The evidence in the case must be considered by us with
reference to its bearing upon the second issue, which is in the
following language: "Would the specific enforcement of
such a contract be oppressive and inequitable?" It will be
seen that this issue submits but one question of fact to the
jury; that is, would it be "oppressive" to specifically enforce
the contract? The other part of the issue only contains the
question, except the last word, "inequitable," and this was
purely a matter for the consideration of the Court upon the
facts found by the jury. . They were not competent to say
whether it was equitable or inequitable any more than it was
lawful or unlawful. They could only find the facts, and
then it was for the Court to say that the facts found made it
inequitable—that is, against equity, against the law as ad-
ministered in Courts of Equity—specifically to enforce the
contract.

Then, does the evidence show that it would oppress, or
would be oppressive, on the defendant to require him to per-
form this contract,—that is, to convey land recently worth
$300 for $1,000? And does this justify him in withholding
from the plaintiff the right he had to have the contract spe-
cifically performed, because the jury found that it would be
oppressive for him to do so, without its being found that the
plaintiff practiced a fraud on the defendant, or that he in
some way dealt unfairly with the defendant, or that he took
some unfair advantage of him· in the transaction, or that
plaintiff suppressed some fact from the defendant of which
he had knowledge and the defendant did not have, and
by reasonable diligence could not have. Without, at
least, some of these elements, we are unable to see
why a specific performance should not have been granted.

There must be something more than the fact that a party had made a bad trade to relieve him from his obligation to perform it.    The simple fact that the defendant sold a tract of land worth $1,500 for $1,000 will not do so, and this is all the defendant can complain of, as he sold it to another for $1,500, after coming to this county, seeing the land, and knowing all about the railroads.    The defendant was raised on this land, and knew every foot of it.    There had been no minerals found upon it to change its intrinsic value, of which the plaintiffs knew and the defendant did not. Nothing had happened to the land but what the defendant knew.    The only thing alleged by the defendant is that two railroads had been built, one from Raleigh to the land, and another from Apex to a point near the land, and saw-mills had been erected near the land, that enhanced its value. These roads are public enterprises, open and notorious, and of equal knowledge to all persons.    The saw-mills were the result of the construction of the roads, and it would hardly seem probable that the defendant, who owned the tract of land only worth $3 per acre a few years ago, would not have been quickened to find out something of the cause, when he had a dozen applications from different parties to buy it at a price above $10 per acre.    But defendant testified that he "had heard rumors of a railroad contemplated to the property.    *    *    *    Had heard rumors that railroad was completed, but gave it no credence.    These rumors came in a letter from the locality; letter written by either one of my brothers or Mr. Blanchard.    *    *    *    Forty or fifty, or sixty, or, perhaps, ninety days, before the 17th of November a brother of witness, who lived in one and one-half miles of spring, wrote that he believed there was to be a railroad, because Mr. Angier got some hands in part off his land, grading the road."    It is a well-settled rule that any knowledge of a fact, the truth of which may be ascertained

by proper inquiry, puts the party`on notice, and deprives him of his equity. *James v. Gaither,* 93 N. C., 358.. But, upon a thorough examination of the evidence (consisting principally of the correspondence), we see nothing concealed from the defendant, or unfair in the transaction, on the part of plaintiffs,—nothing that appeals to the Court to cause it to withhold from the plaintiffs a specific performance of the contract, taking it that there was a contract to sell. *Bryson v. Peck, supra.* We are therefore of the opinion that plaintiffs' sixth prayer for instruction, "that there is no sufficient evidence in the case to authorize the jury to answer the second issue, 'Yes,' and, if the jury believe the evidence, they will answer said issue, 'No,' " should have been given.

Error.   New trial.

FAIRCLOTH, C. J.   I agree to a new trial, but not with the opinion on the merits.