## GEORGE O. SHAKESPEARE v. CALDWELL LAND AND LUMBER COMPANY.

(Filed 7 May, 1907).

1. **Judgment—Pleadings—Specific Performance—Estoppel.**—A judgment is decisive of the points raised by the pleadings, or which might properly be predicated upon them, and does not embrace any matters which might have been brought into the litigation, or any cause of action which the plaintiff might have joined, but which are neither joined or embraced in the pleadings; a judgment in proceedings to foreclose a mortgage, to secure the purchase price of lands conveyed to the plaintiff under a prior contract to convey, does not estop the plaintiff in enforcing specific performance against the vendor for the conveyance of certain lands omitted by mutual mistake from the deed made in pursuance of the contract to convey, when such matter is neither joined or embraced in the pleadings in the action of foreclosure.

2. **Same—Judgment Agreed—Parties.**—A party to an action is bound by a judgment regularly entered dismissing it, but not by the terms of an agreement to which he was not a party, and as to the latter it is not *res judicata* and does not operate as an estoppel.

3. **Deeds—Contract to Convey Land—Specific Performance—Appeal—Examination of Record.**—While, in the absence of controlling conditions, equity will direct specific performance of a

contract to convey land, such performance will not be decreed if it is apparent, from the examination of the entire record, there are phases of the controversy presented by the pleadings which have not been passed upon, and which might make it harsh, inequitable and unjust.

CIVIL ACTION, heard by *Guion, J.,* at Special Term, 1907, of the Superior Court of CALDWELL County. His Honor found the facts under an agreement of the parties.

This is an action for the specific performance of a contract to convey certain lands described in the complaint. Upon the pleadings, admissions and records in evidence his Honor found the following facts and conclusions of law:

On 21 August, 1901, the Caldwell Company executed an option contract to plaintiff Shakespeare, wherein it contracted and agreed, upon the performance by Shakespeare of each and every condition precedent therein named, to sell and convey to said Shakespeare the eighty-six tracts of land particularly described therein, "and together with any other lands in Caldwell County, N. C., in which the said Caldwell Land and Lumber Company has any interest, legal or equitable, whether said lands stand in the name of that company or in the name of any other person as trustee for or representative of that Company."

The Caldwell Company, under said contract, on 13 February, 1902, conveyed to plaintiff the eighty-six tracts of land mentioned in the contract, some equitable interests it then had in the county, the stock of the railroad company, but did not convey the "Williams lands," which then stood in the name of J. M. Bernhart, as trustee of the Caldwell Company.

Shakespeare, in order to secure the balance of the purchase-money, reconveyed the lands that had been conveyed to him, in mortgage also executed by his wife, to the defendant

Caldwell Company; but this mortgage did not include the lands in controversy.

In April, 1902, Shakespeare conveyed to the Penncarden Company the lands that had been conveyed to him, subject to the mortgage he had hitherto executed to the Caldwell Company. This conveyance did not include the lands called the "Williams lands."

On 10 November, 1903, the Caldwell Company instituted an action in the Superior Court of Caldwell County against plaintiff and his wife, the Penncarden Company, and the Railroad Company, the purpose whereof was the foreclosure of the mortgage that had been executed by plaintiff Shakespeare to secure the balance of the purchase-money for said lands therein described and the capital stock of the Railroad Company. The complaint in that action does not describe the lands in controversy. No answer was filed by the defendants, or any of them, and the time therefor was enlarged, by consent, until 30 April, 1904, "without prejudice."

On 5 April, 1904, the Penncarden Company and the Caldwell Company entered into an agreement for the compromise of said action, in which said agreement it is recited: "Whereas the Caldwell Land and Lumber Company has brought suit for foreclosure upon a mortgage covering the real estate of the Penncarden Lumber and Manufacturing Company, in Caldwell County, North Carolina, and the capital stock of the Caldwell and Northern Railroad Company; and whereas all parties to said suit have agreed to settle the same by the Caldwell Land and Lumber Company taking a conveyance from the Penncarden Lumber and Manufacturing Company of the real estate, mills, machinery, plant, and other property covered by the mortgage upon which foreclosure proceedings have been begun, and also of the capital stock of the Caldwell and Northern Railroad

Company," the Caldwell Company agreeing to pay the Penncarden Company, as a consideration therefor, the sum of $15,000.

Whereupon, the parties to said agreement "covenant to and with each other as follows: 1. That the foreclosure proceedings and the collateral proceedings thereunder shall be marked discontinued by the Caldwell Land and Lumber Company." Plaintiff was not a party to this agreement.

On 12 April, 1904, a judgment was filed in the Clerk's office of Caldwell County, rendered upon the foregoing agreement: "That it being made to appear to the satisfaction of the Court that all matters of difference between the parties to the said cause have been adjusted and compromised, it is now, on motion of plaintiff, the defendants all consenting thereto, ordered that the orders entered in said cause appointing a receiver, etc., are hereby vacated and dissolved; and, by like consent of all of said parties, it is further ordered, adjudged, and decreed that the said above action be, and the same is hereby, discontinued and dismissed."

The parties went to trial upon the record of the present and former suits, and the Court found the facts from said records. To the finding of facts there is no exception, only to the conclusions of law of the Court upon such findings.

The findings of the Court below are: That the Caldwell Company did contract to sell and convey to plaintiff all lands and interests in lands owned by it in Caldwell County; that under said contract said company did not convey all lands owned by it at the date of said contract; that the lands in controversy belonged to said defendant at the date of said contract, and that said lands are now the property of said company; that the said lands were omitted from the deed to plaintiff from defendant by mutual mistake; that plaintiff mortgaged to the Caldwell Company all the lands con-

SHAKESPEARE *v.* LAND CO.

veyed to him other than the lands in controversy; that said mortgage did not include the lands in controversy; that plaintiff conveyed to the Penncarden Company all the lands that had been conveyed to plaintiff; that the Caldwell Company instituted an action in the Superior Court of Caldwell County against plaintiff and the Penncarden Company for the foreclosure of said mortgage, and that the final judgment was as set forth in defendant's answer; that plaintiff is estopped by the said proceeding and the admission of the judgment in this action to maintain this action; that being so estopped, plaintiff, therefore, is not entitled to specific performance.

The plaintiff admitted the rendition of the judgment pleaded and the Court, upon an inspection of the record, was of the opinion that the plaintiff in this action could have and should have set up his cause of action in this suit as matter of defense in said former action.

The plaintiff excepted to his Honor's conclusions of law, based upon the findings of fact, for that:

1. That plaintiff was estopped by the judgment of 12 April, 1904, to assert any claim to the land in controversy.

2. That he was not entitled to specific performance of the contract with respect to said land.

From a judgment in accordance with these conclusions of fact and of law, plaintiff appealed.

*Mark Squires* and *Lawrence Wakefield* for plaintiff.
*W. C. Newland* and *Jones & Whisnant* for defendant.

CONNOR, J., after stating the case: Few questions have given rise to more controversy and conflicting judicial *dicta* than that of estoppel by matter of record, or, more accurately expressed, *res judicata.* We could not hope to do more than endeavor, by a recurrence to the basic principle upon which

the doctrine is founded, to decide the question presented upon this appeal.    While the doctrine is based upon a well-recognized principle, the application of it is always difficult. Probably no more accurate or workable statement of the principle, with its limitations, can be found than that of the present *Chief Justice,* in *Tyler v. Capeheart,* 125 N. C., 64.    Reviewing the language used in *Wagon Co. v. Byrd,* 119 N. C., 460, he says: "The judgment is decisive of the points raised by the pleadings, or which might properly be predicated upon them.    This certainly does not embrace any matters which might have been brought into the litigation, or any causes of action which the plaintiff might have joined, but which, in fact, are neither joined nor embraced in the pleadings." It is well settled that a defendant is not required to set up a counter-claim or set-off which he may have to the subject-matter of a cause of action prosecuted against him.    *Woody v. Jordan,* 69 N. C., 189; *Gregory v. Hobbs,* 93 N. C., 1; *Cabe v. Vanhook,* 127 N. C., 424; *Mauney v. Hamilton,* 132 N. C., 303; *Bunker v. Bunker,* 140 N. C., 18.

The facts set forth in the complaint in this action could not have been pleaded as a defense to the former action. They do not constitute payment of the debt upon which that action was founded.    They may have been set up as the basis of an equitable counter-claim, in which event the present plaintiff would have asserted an equity for correction of the deed by including the land in controversy, whereupon there would have followed, of necessity, the correction of the mortgage.  If the Court had thus administered the rights of the parties it would have made a decree foreclosing the mortgage, directing a sale of all of the lands, or so much of them as was necessary, to pay the debt, etc.    It is evident that, under the general issue, this relief could not have been administered in that action.    It is settled that, under the Code system of

pleading, if a defendant has a cause of action against the plaintiff which would entitle him to maintain a civil action in which he could demand equitable relief, or, to speak more accurately, relief which he could have had only in a court of equity, he may set it up by way of equitable counter-claim. If he does so, he must set out the facts upon which his alleged right is based with the same particularity as if made the foundation of an independent action. It may be that an estoppel would arise upon a judgment dismissing the action, if the agreement upon which the judgment is based includes all matters put in issue by, the pleadings. In that event the Court would refer to the terms of the agreement for the purpose of ascertaining what was included in the settlement, and the judgment would be read in the light of the agreement.

In this case, no answer having been filed, it is impossible to see what was included in the judgment, and the agreement throws no additional light upon the question. It does not even appear that the present plaintiff knew that the "Williams land" was included in the option; that is, that Bernhart held it in trust for the present defendant. While the present plaintiff is bound by the judgment dismissing the action, because a party thereto, he is not a party to the agreement pursuant to which it was dismissed. We can not concur with the opinion of his Honor that the judgment in the former action is an estoppel, or that his cause of action herein is *res judicata*. The plaintiff's exceptions to the conclusion of law in that respect must therefore be sustained. This conclusion would entitle plaintiff to a decree for specific performance but for the fact that by an examination of the entire record, as it is our duty to make, it is apparent that there are phases of the controversy presented by the pleadings which have not been passed upon. The defendant tendered several

issues, raised by the answer, which his Honor declined to submit because he was of the opinion that, upon the facts found, plaintiff was not entitled to judgment. Defendant excepted to the refusal to submit the issues, and while it does not appeal, having recovered judgment, it is manifest that we might do injustice by directing judgment upon the facts found. The pleadings and records attached show clearly that the real merits of the controversy have not been adjudged. We do not purpose to express any opinion in respect to them, but simply indicate what questions should be settled before final judgment is rendered.

It appears that the contract of 21 August, 1901, was entire. A large body of land, including that in controversy, was to be conveyed by the land and lumber company to plaintiff in consideration of $625,000, payable as follows: $125,000 in cash, the balance in accordance with the terms set out in the agreement, the details of which are not material, except that a mortgage was to be executed to secure the deferred payments, "as counsel for the Caldwell Land and Lumber Company may require." The deed was executed according to the option, but, by mutual mistake of the parties, the "Williams Land," the title to which was then held by Bernhart in trust for the lumber company, was not included. The mortgage was executed in accordance with the terms of the option, including all of the land conveyed in the deed. Thereafter the plaintiff conveyed the land, subject to the mortgage, to the Penncarden Lumber Company. The transfer of certain stock in the Caldwell and Northern Railroad Company was included in the agreement. It is not material to set out in detail this portion of the transaction. Thereafter, default having been made in the payment of the instalments and interest, in accordance with the terms of the mortgage, the lumber company on 10 November, 1903, instituted an

action in the Superior Court of Caldwell County against the present plaintiff, the Penncarden Lumber Company and the said railroad company.

In the complaint filed in said action, the sale of the land to plaintiff herein, the conveyance by him by way of mortgage to defendant herein, with full description of the debt, etc., are set out. It is also alleged that plaintiff herein conveyed the lands to the Penncarden Lumber Company, subject to the mortgage; that the mortgagor had made default in the payment of the instalments, as provided by the terms of the mortgage. It was also alleged that the value of the land consisted largely of the timber thereon, and that the Penncarden Lumber Company was cutting and removing the said timber therefrom, impairing the value of the security afforded by said mortgage. That the said lumber company, nor the plaintiff, had sufficient property, independent of said lands, to pay the mortgage indebtedness, etc. The Caldwell Lumber Company asked that the Penncarden Lumber Company and the plaintiff herein be enjoined from cutting timber and that a receiver be appointed, etc. Judgment of foreclosure was demanded.. It was also alleged that the plaintiff herein was one of the largest stockholders and was the general manager of the Penncarden Lumber Company; that said company was formed for the purpose of enabling the plaintiff herein to more conveniently manage the said lands, and cut and market the timber thereon. The motions for injunction and receiver were continued from time to time by consent, without prejudice, and time given the plaintiff herein and the other defendants therein to file answer.

On 15 April, 1904, the two corporations entered into the agreement, the terms of which are set out herein, by which the Caldwell Land and Lumber Company took a conveyance from the Penncarden Lumber Company of the real estate,

mills, machinery, plant, and other property covered by the said mortgage, and also of the capital stock of the Caldwell and Northern Railroad Company, the Caldwell Land and Lumber Company paying the Penncarden Lumber Company $15,000, less certain costs, etc., "as appears by a letter written by Peter Boyd, president of the Penncarden Lumber Company, dated 14 January, 1904." The plaintiff herein was not a party to this agreement. Pursuant to said agreement, the judgment set out herein was rendered. The defendant, among other issues, tendered one directed to the question of payment of the purchase-money for the land in controversy. It may be that, when the whole transaction, with the negotiation leading up to the settlement, is developed, it will appear that the conveyance of the land, etc., by the Penncarden Company and the plaintiff herein was made by way of cancellation of the entire transaction and that it would be inequitable to compel the defendant herein to convey the "Williams land" to plaintiff. There is nothing in the record to indicate the value of the land, or what relation it bore to the entire purchase-money. It is elementary that while equity will, in the absence of any controlling conditions, direct the specific performance of a contract to convey land, it is equally so that such relief is not of absolute right, but rests in the sound judicial discretion of the Court.

Where the entire evidence shows that specific performance would be harsh, inequitable and unjust, the plaintiff will be left to his action for damages. If the parties herein have, in good faith, settled and adjusted all matters between them growing out of the option of August, 1901, and have, in effect, canceled the transaction, while they may not have made the terms of their settlement a matter of record operating as an estoppel, it may be that, in the light of what they have done, it would be unjust and inequitable to compel the

defendant herein to convey to the plaintiff this land in controversy. *Boles v. Caudle,* 133 N. C., 528.

Without intending to express any opinion affecting the ultimate disposition of the case, we reverse the judgment of his Honor and direct a new trial, to the end that the parties may proceed as they may be advised. The cost in this Court will be divided equally between the parties.

New Trial.