LEE HUTCHINS v. WILENA GOODSON HONEYCUTT

No. 7428SC466

(Filed 7 August 1974)

Specific Performance; Vendor and Purchaser § 5— contract to sell land —
specific performance — overreaching by buyer — insufficiency of evi-
dence

> The trial court erred in denying specific performance of a con-
> tract for the sale of land on the ground that the contract was procured
> by overreaching on the part of plaintiff buyer where the evidence
> showed only that the plaintiff knew that defendant seller's husband
> was an invalid and that defendant had recently been treated for
> cancer, that plaintiff and defendant discussed and agreed on the
> sale at the home of defendant's brother, that defendant signed the
> agreement of her own free will at an attorney's office and that
> defendant refused to abide by the contract because her husband did
> not want her to sell the land, and where there was no contention or
> evidence that the purchase price agreed upon was not fair and reason-
> able.

> Judge MORRIS dissenting.

APPEAL by plaintiff, after trial before *Friday, Judge,* 14
January 1974 Session of Superior Court held in BUNCOMBE
County, assigning error to order entered by *Martin, (Harry C.),
Judge,* on 15 June 1973.

This action was instituted to compel defendant to convey a
tract of land, about 35 acres, to plaintiff for $35,000.00 pursuant
to a written contract executed by the parties. Plaintiff had paid
$100.00, and the balance was due upon delivery of the deed. The
contract called for completion of the transaction on or before 28
April 1972. By a letter dated 22 April 1972, defendant advised
plaintiff the sale would not be made. Plaintiff urged defendant to
comply with the contract by telephone and through counsel.

The verdict was as follows:

"FIRST: Did Wilena Goodson Honeycutt execute the
paper writing set out in the Complaint?

ANSWER: Yes.

SECOND: Is $35,000.00 a reasonable and fair price for
the property in question?

ANSWER: Yes.

THIRD: Did Wilena Goodson Honeycutt breach said contract?

ANSWER: Yes.

FOURTH: Is the plaintiff, ready, able and willing to carry out his part of said contract?

ANSWER: Yes."

Judge Martin refused to enter judgment ordering specific performance and, instead, issued an order with the following conclusions:

"That, although the contract found by the jury is a lawful contract and the Court could not set the same aside, this Court does find that the contract was procured by overreaching the defendant at a time at which her mental and physical condition was impaired and when she was under emotional stress, and the agreement was procured with a degree of unfairness which induces this Court to withhold its aid in the specific performance of the agreement, this Court being of the opinion, in the exercise of its judicial disfretion (sic), that under the rules set forth in *Knott vs. Cutler*, 224 N.C., p. 430, that equity should not be granted to the plaintiff to require the specific performance of this agreement.

Upon the foregoing findings of fact and conclusions of law, IT IS THEREFORE HEREBY ORDERED, in the exercise of the discretion of the Court, that the plaintiff's prayer for specific performance of the contract in question be, and the same is hereby denied.

IT IS FURTHER ORDERED that this cause shall be placed upon a subsequent calendar for trial before a jury upon the following issue: 'What amount is the plaintiff entitled to recover from the defendant?' "

At the trial on the issue of damages, the jury answered the issue "nothing."

Plaintiff, having duly preserved his exceptions, appealed from the order of Judge Martin denying specific performance.

*S. Thomas Walton for plaintiff appellant.*

*Morris, Golding, Blue and Phillips by William C. Morris, Jr., for defendant appellee.*

VAUGHN, Judge.

The only question presented is, as posed by appellant, "Is the plaintiff entitled to specific performance of the agreement entered into by the plaintiff and the defendant?"

The decision to grant or withhold specific performance must be exercised in accordance with settled rules and principles applied to the facts and circumstances of the case being tried. The discretion involved is not left to the mere will of the court in the sense that the court could make a different decision in two cases that are exactly alike.

> "As to when specific performance will be enforced in this jurisdiction, their rule is clearly stated in *Combes v. Adams,* 150 N.C., 64, 63 S.E., 186, where Hoke, J., speaking for the Court, said: 'It is accepted doctrine that a binding contract to convey land, when there has been no fraud or mistake or undue influence or oppression, will be specifically enforced. *Rudisill v. Whitener,* 146 N.C., 403; *Boles v. Caudle,* 133 N.C. 528; *Whitted v. Fuquay,* 127 N.C., 68. This last decision being to the effect that mere inadequacy of price, without more, will not as a rule interrupt or prevent the application of the principle.' This doctrine or principle has been cited with approval in *Ward v. Albertson,* 165 N.C., 218, 81 S.E., 168; *Thomason v. Bescher,* 176 N.C., 622, 97 S.E., 654; and *Harper v. Battle,* 180 N.C., 375, 104 S.E., 658." *Knott v. Cutler,* 224 N.C. 427, 31 S.E. 2d 359.

In *Knott,* plaintiff, a man of wide business experience with knowledge of the value of farm land, contracted with an elderly widow with little business experience to purchase the widow's farm which was worth $5,250.00 for $2,300.00. The widow had great confidence in plaintiff because of her dealings with him. Her late husband had had business dealings with plaintiff for many years and sold most of his tobacco in plaintiff's warehouse. The Supreme Court reversed the trial judge and ordered that a decree for specific performance be entered. The Court said, "It must be conceded that the defendant made a bad bargain and that the consideration is inadequate, but, since the agreement for the sale of the property was not procured by fraud on the part of the plaintiff, it is a binding agreement, and we believe the ends of justice will be subserved by granting a decree of specific performance."

In *Knott,* the Court quoted with apparent approval from a section of American Jurisprudence, as follows:

" 'As a general rule, when it appears that a contract was unfairly procured by overreaching or overkeenness on the plaintiff's part, or was induced or procured by means of oppression, extortion, threats, or illegal promises on his part, the plaintiff cannot obtain specific performance. These matters need not be of such character as would justify a court of equity in rescinding the contract or a court of law in refusing relief. There is a difference between that degree of unfairness which will induce a court of equity to interfere actively or by setting aside a contract and that which will induce a court to withhold its aid. Relief may be denied upon ground that the contract is harsh, unjust, or oppressive, regardless of any actual fraud, and regardless of the fact that the contract is valid.' "

At the outset we note that defendant has never pled or testified that she had been treated unfairly. In her answer (1) she denied knowledge of the execution of the contract sued on, (2) alleged that her agreement was conditional on her husband's agreement to the contract and pled that her husband refused to join in the execution of the contract and, therefore, performance was impossible and (3) alleged that plaintiff failed to tender the purchase price.

Defendant is a college graduate, having received a B.S. degree from Western Carolina University. In addition she has taken extension and inservice courses. She has engaged in her profession as a schoolteacher for a number of years. She was employed as a teacher at the time she entered into the contract and was still so employed when the case was tried. On 17 December 1971, she had surgery for cancer and took 25 cobalt treatments. The treatments were completed before the time she made the contract and had returned to work. She inherited most of the property in question from her parents. She acquired title to the remaining 11 acres by deed from her husband who had purchased it from her brother, Bill Goodson. She owned the land in her own right. Her parents had owned the land for a long number of years prior to their death. Defendant knew plaintiff before the date of the contract but did not know him very well. She knew that he owned a tract of land located about 100 yards from the parcel she contracted to sell. As a result of a conver-

sation with the brother, Bill Goodson, she agreed to meet with plaintiff at her brother's home for the purpose of discussing a sale of the property. Her brother had told her that plaintiff was interested in purchasing the property. Prior to that meeting, she and plaintiff had never discussed a sale of the land to plaintiff.

Plaintiff had discussed the terms of the sale with defendant's brother on several occasions and had reached an understanding with him as to what the bargain would be. Plaintiff knew defendant, had heard that her husband was an invalid and that she had cancer. He had made arrangements for a loan and, at all relevant times, was ready and willing to pay for the property.

Defendant denied that another brother, Arloe Goodson, who used the property for pasture, had tried to buy it for a sum substantially less than that offered by plaintiff.

Defendant's testimony relative to her conversation with plaintiff at her brother's (Bill Goodson) home, was in part, as follows:

"I had an occasion to see Mr. Hutchins at my brother's home in Newbridge sometime in the early part of 1972. That was about the latter part of March, I would say. I had not seen him or discussed it with him at any time prior to that a sale of my property. There was a discussion about the sale of my property at that time. My husband was not with me at the time and the reason he wasn't because he was not physically able. I happened to go to my brother's house on that occasion because I was called and asked to meet Mr. Hutchins there. My brother Bill Goodson called me. During the discussion I had there with Mr. Hutchins, I made the statement about my husband that he would have to agree to the sale and would have to sign the deed. I do not remember Mr. Hutchins' exact words to that. He did not make any objection to that at that time."

Plaintiff gave defendant a cashier's check for $100.00 dated 28 March 1974. Defendant was told to go to the law office of Floyd Brock the next day to sign the papers. Brock had been employed to draft the contract and examine the title for plaintiff. The next day, at about 4:30 p.m., she did go to the lawyer's office to sign the papers. Plaintiff was not present at that time.

Defendant testified, "I said I would go up there. I wasn't forced to go up there. And I went up there for the purpose of signing a paper that had to do with the sale of my property for the sum of $35,000.00 and I knew that." She couldn't recall whether she was left alone to read the contract but did recall that Mr. Brock was present when she signed the contract. Brock witnessed her signature. She was not rushed. She had the opportunity to read all or so much of the contract as she wanted to before she signed it. "I looked at the paperwriting close enough before I signed it to see the purchase price was inserted in the blanks of $35,000.00." Her name alone appeared at the top of the paper, and the property is in her name alone and not her husband's. She said, "I was not coerced. I signed it of my own free will." "I was teaching school in March and April of 1972. My mind was not affected by the cobalt treatments that I had previously had. If it had I would not have been working." *Thereafter* she discussed the matter with her husband and one of her children.

In a letter dated 22 April 1972, defendant wrote plaintiff as follows:

"Dear Mr. Hutchins:

My son visited with us over the past weekend and we discussed the suggested sale to you of the old home place with my husband. He will not agree to the sale or to sign a deed out of the family.

The physical and mentral (sic) strain I have been under for the past months has been most difficult. I am returning your check, uncashed, and am informing you that the sale of this property cannot be made."

She testified that when, in her letter, she said that she had been under a physical and mental strain, she was referring to the operation and treatments for cancer she had received in 1971. After plaintiff received the letter he attempted to telephone defendant but she refused to talk with him and suggested that he contact her attorney. Plaintiff's attorney wrote defendant and reminded her of her obligations under the contract. Defendant refused to comply, and the litigation followed.

The jury found that the purchase price of $35,000.00 was fair and reasonable. Defendant has never contended otherwise. She insists that the fair market value of the property is not

more than $35,000.00. Thus, even she does not say that she is a victim of a sharp or unfair bargain or that plaintiff attempted to deceive her. There is nothing in the defendant's testimony which indicates that even she believes that her treatment for cancer or any other defect in her physical or mental condition contributed to or caused her to decide to execute the contract. Defendant did not testify or offer any evidence which would so much as suggest that plaintiff, or anyone else, even *urged* her to sell the property. Defendant does not suggest that her brother, Bill Goodson, acted other than for her and in her best interest. The recitals in the Judge's order refer to the fact that the land had been in defendant's family for a long number of years. Defendant does not suggest that she considers this a reason why she should not sell her land.

In fact, there is not a scintilla of evidence from defendant that she does not want to sell her land on the terms called for in the contract. The evidence is that her husband does not want her to sell and this is the only reason she has assigned for her failure to abide by her contract. The wishes and desires of defendant's husband, if she considered them to be important, were matters for her consideration before she agreed to sell and accepted plaintiff's earnest money and before, on a later day, she voluntarily went to the office of an attorney to formally execute the written contract. The wishes of defendant's husband afford no basis for the court to deprive plaintiff of the benefits of his contract.

One may be too crafty or may get such an unfair advantage of another by sharp, tricky or deceitful means (not amounting to the fraud that would vitiate the entire contract) that will justify the court in concluding, on facts found, that he has overreached himself, that is, that he has defeated himself by seeking to gain too much by those improper means. In that event the court may withhold specific performance and leave the offender to his damages. There is no evidence in this record to suggest that plaintiff has done anything which could be held to defeat his right to have his contract enforced according to its terms.

The judgment is reversed. The case is remanded to the end that a decree for specific performance may be entered against defendant.

Reversed and remanded.

Judge BALEY concurs.

Judge MORRIS dissents.

Judge MORRIS dissenting.

Plaintiff's sole assignment of error is to the order denying specific performance. He contends that, absent a finding that the contract was procured by fraud, mistake, undue influence or oppression, specific performance should be granted when the plaintiff shows the contract to be valid. He takes the position that the "overreaching" which was found by the court to have been practiced by the plaintiff on the defendant at a time at which her mental and physical condition was impaired and when she was under emotional stress must be tantamount to fraud. Accordingly, the plaintiff contends, the evidence before the court is insufficient to justify a conclusion that the contract was procured by overreaching amounting to fraud.

It is well established in this State that specific performance of a contract is granted in the sound discretion of the court and not as a matter of absolute right. This discretion is to be exercised upon a consideration by the court of the circumstances of the case, with a view of subserving the ends of justice. *Knott v. Cutler,* 224 N.C. 427, 31 S.E. 2d 359 (1944). "Where the entire evidence shows that specific performance would be harsh, inequitable, and unjust, the plaintiff will be left to his action for damages." *Shakespeare v. Land Co.,* 144 N.C. 516, 525, 57 S.E. 213 (1907).

In the case before us, the court made no findings of fact of fraud, mistake, undue influence or oppression. It appears to me that the circumstances of this case bring it within the application of *Knott v. Cutler, supra,* where the Court stated:

> " 'As a general rule, when it appears that a contract was unfairly procured by overreaching or overkeenness on the plaintiff's part, or was induced or procured by means of oppression, extortion, threats, or illegal promises on his part, the plaintiff cannot obtain specific performance. . . . Relief may be denied upon ground that the contract is harsh, unjust, or oppressive, regardless of any actual fraud, and regardless of the fact that the contract is valid.' " (Citing 49 Am. Jur., § 51, p. 66).

The court, having heard the evidence, observed the parties and the witnesses, found that the plaintiff procured this contract by overreaching the defendant at a time when she was under extreme mental and physical stress. This finding is supported by competent evidence of the plaintiff's condition and of the defendant's awareness of that physical and emotional condition. I would hold that the trial court did not abuse its discretion by ruling that the contract was procured by overreaching on the part of plaintiff and in denying specific performance of the contract.