MOLLIE E. QUEEN ET AL. v. THE DIXIE FIRE INSURANCE COMPANY.

(Filed 3 January, 1919.)

1. **Insurance, Fire—Principal and Agent—Agent's Statements—Amount of Loss—Res Gestæ—Statutes—Evidence.**

   A statement of an agent acting for his company in writing fire insurance, made after an inspection of the property to be insured, is competent upon the question of the amount of the loss, in the action of the insured to recover upon the policy issued, especially as our statute, Revisal, sec. 4755, requires that the insurer should know the true value of the property, etc., to be insured before issuing the policy thereon.

2. **Insurance, Fire—Amount of Loss—Impeaching Evidence—Explanation—Trials—Questions for Jury.**

   Where property that has been allotted as a homestead has been insured against loss by fire, and suit has been instituted against the insurer to recover the loss, and the plaintiff's exceptions to the value of the property so allotted has been introduced in evidence, showing that the value was claimed to be in a less sum than that demanded in the present action, it is competent for the plaintiff to explain that it was done to gain time and pay the debt, its credibility or weight being questions for the determination of the jury.

ACTION tried before *Lane, J.,* and a jury, at May Term, 1918, of HAYWOOD.

The action was brought by the plaintiff to recover the amount of an insurance policy, or the sum of $2,150, issued by the defendant upon her dwelling-house, barn and household and kitchen furniture, and other personal property in the house. Her house was destroyed by fire in May, 1917.

The jury returned the following verdict:

1. Did the defendant, the Dixie Fire Insurance Company, execute and deliver to the plaintiffs the insurance policy, as alleged in the complaint? Answer: "Yes."

2. Did the plaintiffs furnish to the defendant proof of loss as provided in said insurance policy after the destruction of the property by fire, as alleged in the complaint? Answer: "No."

3. If proof of loss was not furnished by the plaintiffs as required by the terms of said insurance policy, was the same waived by the defendant? Answer: "Yes."

4. What damage, if any, are the plaintiffs entitled to recover by reason of the loss of the house? Answer: "$1,800, with interest."

5. What damage, if any, are the plaintiffs entitled to recover by reason of the loss of the personal property? Answer: "$350, with interest."

6. Are the plaintiffs the owners of the personal property described in the complaint? Answer: "Yes."

Judgment was rendered on the verdict, and the defendant appealed.

*Morgan & Ward and John M. Queen for plaintiffs.*
*F. E. Alley and Brooks, Sapp & Kelly for defendant.*

WALKER, J., after stating the case: The first exception was taken to the declaration of Thurman Williams, agent of the defendant company, as to the value of the house, which was that it would cost her three thousand dollars to build such a house. He was then the local agent of the company, and was soliciting the insurance and preparing to issue the policy. He went to plaintiffs' home and examined the house, and while engaged in this business for the company and in the course of the transaction he stated to Mrs. Queen that it would cost three thousand dollars to build it. We do not see why this evidence was not competent.

The company contested the value placed upon the property at the trial. Mrs. Queen had testified that the house was worth at least three thousand dollars at the time it was burned. The books make a distinction between acts and declarations, or statements, which constitute part of the *res gestæ,* and those of an agent who is acting for his principal and within the scope of his agency.

Tiffany on Agency says, at p. 252: "Every act or event is set about by surrounding circumstances, or circumstantial facts, which 'may consist of declarations made at the time by participants in the act, or other acts done, of the position, condition, and appearance of inanimate objects, and of other elements which serve to illustrate the main act or event.' Subject to not very well-defined limitations, such circumstances may be proved as part of the thing done—the *res gesta,* or, as it is commonly put, the *res gestæ.* Such declarations comprise statements, exclamations and other utterances by the participants in the act. They are received on the ground of their spontaneity. 'They are the *ex tempore* utterances of the mind under circumstances and at times when there has been no sufficient opportunity to plan false or misleading statements; they exhibit the mind's impressions of immediate events and are not narrative of past happenings.' Such declarations constitute an exception to the hearsay rule. To be admissible they must be made while the act is being done or the event happening, or so soon thereafter that the mind of the declarant is actively influenced by it. The cases are not in accord as to the extent of the time which the *res gestæ* cover, and indeed the time necessarily depends more or less upon the circumstances of each case." It will be seen that this refers to the admission

or declaration of a person, whether an agent or not, which was made while the transaction was going on, and in which he was a participant, for it is said that "if a declaration is admissible as a part of the *res gestœ* it is competent, no matter by whom said." Tiffany, p. 254; *Ohio, etc., Ry. Co. v. Stein,* 133 Ind., 243, per *Elliott, C. J.*

As to the statement of an agent, "It is commonly said that the statement must be made while the agent is engaged in transacting some authorized business, and must be so connected with it as to constitute part of the *res gestœ.* But 'the Latin phrase adds nothing'; it is used here as an equivalent expression for the business on hand or the pending transaction, as regards which for certain purposes the law identifies the principal and the agent. . . . If the requirement that the statement be made as part of a pending transaction, as explained, be fulfilled the nature of the transaction is immaterial and the admission may be of a present or of a past fact. While the statement of an agent in negotiating a contract may constitute the agreement of the principal or an inducement to the contract, and thus form the basis of an action upon the contract, or for deceit, a statement made by the agent in the negotiation in regard to the subject-matter may also be used against the principal as an admission in an action not based upon the contract or the statement." Tiffany, p. 249. See, also, *Smith & Melton v. R. R. Co.,* 106 N. C., 105; *Darlington v. Telegraph Co.,* 127 N. C., 68-107.

By our statute (Revisal, sec. 4755) an insurance company cannot issue a policy upon property within this State for an amount which, together with any existing insurance thereon, exceeds the fair value of the property, so that it is necessary that the company, before it issues a policy, should know the true value of the property to be insured; and this agent was there for that purpose and was negotiating in behalf of his company for the insurance and preparing to issue the policy, for which purpose he was inspecting the property in order to ascertain its value, and it was while he was thus engaged for the company that he made the statement to which the objection was taken. The declaration was competent as part of the thing done within the rule we have stated. *Stanford v. Grocery Co.,* 143 N. C., 419; *Merrill v. Dudley,* 139 N. C., 57. The principle is lucidly stated and illustrated in *V. & M. R. Co. v. O'Brien,* 119 U. S., 99 (30 L. Ed., 299); *N. J. St. Co. v. Brockett,* 121 U. S., 637 (30 L. Ed., 1049), and notes.

It is immaterial to decide whether it was competent as the declaration of an agent while engaged in his principal's business and within the scope of his employment as the other is a sufficient ground for its admission.

The defendant introduced the papers containing Mrs. Queen's exceptions to the allotment of her homestead, showing that she had valued her

property at less than she now claimed, and she was then asked by her counsel why she had filed exceptions alleging a lower value, and she answered that it was done to gain time so that she could pay the debt and save her property. A witness may explain her acts, as shown by testimony offered against her, and it is for the jury to say what credit or weight should be given to the explanation. It was held in *Armfield v. R. R. Co.,* 162 N. C., 24, at 28, that when a witness is impeached by evidence of bad character or by evidence of contradictory statements made by him, confidence in his veracity and in the credibility of his testimony may be restored or strengthened by any proper evidence which tends to produce the desired effect. The very question was decided in *Phifer v. Erwin,* 100 N. C., 59, where it was held: "Where a witness, on his examination upon a second trial, gave his opinion that the value of the property in controversy was greater than the amount he had testified to on a former trial: *Held,* that he might state the reasons for the changes by way of explanation." While the explanation was not very reassuring, we cannot say it altogether lacked plausibility or force. The jury seemed to have accepted it as satisfactory, as they gave her the full amount of her policy, or what she claimed, and the verdict is not without support in the evidence. There was testimony that the agents of the company, the adjuster and another, promised that the policy would be paid.

The other exceptions, which are merely formal, are without any merit. No error.