It is the well-established principle in this jurisdiction that the beneficiaries may recover on a bond of this character (47) — usually laborers and materialmen — when there is express provision to that effect, or when it appears by fair and reasonable intendment that these rights and interests were contemplated and being provided for. McCausland v. Construction Co., 172 N.C. 708-711, citing Morton v. Water Co., 168 N.C. 582; Withers v. Poe, 167 N.C. 372;Supply Co. v. Lumber Co., 160 N.C. 428; Town of Gastonia v.Engineering Co., 131 N.C. 363; Gorrell v. Water Co., 124 N.C. 328.
From the findings of the referee and a perusal of the bond and contract it appears that "this bond is to be liable for payment of labor and material"; and not only so, but when the bond was first presented to the attorney of the owner, objection was made that it contained no such guarantee, and the agent and assistant resident secretary of the company, O. L. Grubbs, on being asked if his company didn't make that kind of a guarantee, replied that it did, but at a higher premium.
Speaking to this question, the attorney testified as follows: "I asked him whether that bond protected claims for labor and material which were against the contractor, but which might not be legal claims against the owner. He told me that it did not. I told him that I would very much prefer for the bond to be so written that it would cover all claims against the contractor for material or labor, no matter whether the owner was legally responsible or not, and asked him if he wrote such a bond; that I understood other companies did, and that it was generally known as a government bond. Mr. Grubbs told me that they wrote such a bond, but that the form I wanted took twice the premium of the original contractor's bond, and that in his opinion, Mr. Johnson would object to paying the double premium. I told Mr. Grubbs that under the circumstances I would agree to pay the extra premium myself and asked him if he would write it under these conditions. He told me that he would write that sort of a bond, but that if he wrote that bond he *Page 50 
would like to have joint control of the funds with Mr. Johnson, and I told him that would suit me even better. We had a meeting, and there were present at the meeting Mr. Johnson, Mr. Hughes, Mr. Brown, Mr. Grubbs, and myself. I made the statement at the meeting that I wanted a bond which would not only indemnify the owner, but would indemnify the labor and materialmen, and that I understood it was a double premium; that we would pay the premium and wanted joint control of the funds. I asked Mr. Grubbs whether he would send the bond to his company to get it executed, and he told me that he would not, that he could write the bond himself and would file with the bond authority from the company for making contracts in their name."
This testimony and the authorities cited are in full support of the referee's findings and conclusions of law thereon, that the bond (48) may be made directly liable to the claimants, and defendant's exceptions to these rulings must be disallowed.
Again, the bond stipulates, among other things, that no suit, action or proceeding, by reason of any default, shall be brought against the principal or surety, or shall recovery be had for any damages accruing after 15 September, 1916; that service of any writ or process commencing any such suit, action or proceedings shall not be made after that date, etc., and it is objected that this suit, instituted after that date, in October, 1916, and the early part of 1917, cannot be maintained.
We concur in the view of the referee, approved by his Honor, that the restrictive stipulations, by correct interpretation, refers to suits seeking to recover damages which might accrue after 15 September, 1916, and that it does not prevent the maintenance of an action brought after that date for damages accruing prior to that time. Apart from this, guarantee or indemnity bonds of this character are regarded in this jurisdiction and under well-considered authority elsewhere as being in the nature of insurance contracts and, for like reasons, subject to similar rules of interpretation. Bank v. Fidelity Co., 126 N.C. 320; American Surety Co. v.Pauley, 170 U.S. 133-160; School District v. McCorley, et al., 92 Kan. 53; 1 Cooley Briefs on Insurance, pp. 590-592. They are, too, classed and regulated under our General Insurance Laws, ch. 100; Revisal, sub. div. 14, sec. 4805, and in our opinion comes clearly within the terms and purpose of section 4809 of the statute which makes provision as follows: "No company or order, domestic or foreign, authorized to do business in this State under this chapter, shall make any condition or stipulation in its insurance contracts concerning the court or jurisdiction wherein any suit or action thereon may be brought, nor shall it limit the time within which such suit or action may be commenced to less than one year after the cause of action accrues or to less than six months from any time at which a plaintiff shall take a nonsuit *Page 51 
to an action begun within the legal time. All conditions and stipulations forbidden by this section shall be void."
There is nothing in this section which imposes undue restriction on the right of contract guaranteed the citizen by our Constitution, and being, as it is, an expression and in furtherance of the public policy of the State on this subject, all contracts covered by the law must be and are made subject to its provisions, and the position is in no way modified or affected by the stipulation appearing in this agreement. "That the obligations of the surety hereunder is and shall be construed strictly as one of suretyship only," etc. Smathers v. Ins. Co., 151 N.C. 98; Branch v.Tomlinson, 77 N.C. 388; Short v. Bullion, etc., Mining Co., 20 Utah 20; 9 Cyc. 480.
In this last citation, the principle is stated as follows: "A person may lawfully waive by agreement the benefit of a statutory (49) provision. But there is an important exception to this general rule in the case of a statutory provision whose waiver would violate public policy expressed therein, or where the rights of third parties, which the statute was intended to protect, are involved."
After stipulating for the faithful performance of the contract and for the payment of labor and materials, the bond contains, among others, the following provision: "Provided, however, and upon the following further express conditions: (1) That in the event of any default on the part of the principal in the performance of any of the terms, covenants or conditions of said contract, written notice thereof, with a verified statement of the particular facts showing such default and the date thereof, shall, within thirty days after such default, be delivered to the surety at its office in the city of Washington, D.C., and that in case of any such default all moneys which, but for such default, would be due or would thereafter become due to the principal shall be held by the obligee and by him applied for the indemnification of the surety."
And recovery is resisted further on the ground that default was made in not completing the building by 15th June, and the written notice referred to and required by this provision was not given till some time in September following.
Where a clause of this kind is expressed in the general terms of this stipulation, there is much authority to the effect that a failure to give the notice provided for does not always or necessarily extend to the full measure of the obligation, but is restricted to those defaults for which damages are claimed; for instance, that a default in failing to complete the contract on time is not within the terms and meaning of the clause unless the recovery is sought for such failure; and it is further held that such a stipulation does not apply to suits and claims for labor and material, a position that finds support in the closing part of *Page 52 
the provision: "That on default made, the owner shall retain any amounts due or would have been due in protection of the surety," and by a clause in the builder's contract making express provision for the damages to be paid in case of delay, to wit, "a rental of $1.50 per day for each uncompleted house till the entire delivery of the work," etc. Lakeside Land Co. v.Empire, etc., Surety Co., 105 Minn. 213; Kildall Fish Co. v. Giguerre etal., 136 Minn. 401; Monroe v. National Surety Co., 47 Wn. 488; Denney v.Spurr et al., 38 Wn. 347; American Surety Co. v. Scott, 18 Okla. 264;School District v. McCurley et al., 92 Kan. 53.
But assuming that in all actions of this kind, prosecuted directly on the bond by the materialmen, they must be bound by its stipulations, we fully concur in the ruling also that this requirement of the (50) contract has been waived and the company is not in a position to maintain such a defense. On this question it appears from the facts in evidence and the findings of the referee that the bond when first presented to the attorneys of the owner contained in express terms no provision for the payment of laborers and materialmen, and the agent of the company in charge of the matter changed the bond so as to make the same liable in this respect, receiving for the company an additional fee by reason of this increase of liability; that the certificate of authority filed with the owner by the agent showed that he was a duly elected and qualified resident assistant secretary of the company, and that while there was a number of resident assistant vice-presidents of the company in Greensboro having power to affix the seal of the company to obligations of this kind they were not to be considered as binding unless attested by this resident secretary.
It further appeared that when this officer inserted in the bond the required stipulation, guaranteeing payment to the materialmen, in further protection of his company and with the assent of all the parties, he secured a change in the building contract to the effect that any and all checks in payment for material should be drawn jointly by said agent and the contractor, and they were so drawn during the continuance of the contract relations, the agent, with said contractor, receiving in the months of March, April, May, June, and July sums amounting to $16,615, which was paid to claimants in the reduction of the actual or potential liability of the company; and, further, that the delay in taking over and completing the work by the owner, under a clause providing for this course, and in giving the notice stipulated for in the bond, was owing to the request and earnest insistence of the company's agent, both to the owner and the materialmen, he representing that the contractor had arranged to secure the necessary money and would complete the buildings if allowed the additional time. It was shown that *Page 53 
there was a number of resident vice-presidents of the company living in the city of Greensboro at the time, and it also appears, by reasonable inference, that while the contract was thus in the course of performance a representative of the company from the central office was in Greensboro for the purpose of looking into the matter and with every opportunity to do so. There is nothing in the evidence, written or oral, that puts any express restrictions on the agent's authority in the respect suggested; nor does it appear that the defendant company has in any way been damaged by reason of the delay, and under the conditions presented and the authorities applicable, we are of opinion that this agent and resident assistant secretary was a "general local agent" having full charge of the matter; that his acts in the premises were binding on the company and constituted a waiver of the alleged breach, if indeed any breach was committed. Horton v. Insurance Co., (51)122 N.C. 498; Dibbrell v. The Home Insurance Co., 110 N.C. 194;Grubbs v. Insurance Co., 108 N.C. 472; Union Life Insurance Co.v. Williams, 80 U.S. 222; 14 R.C.L. 1158; 3 Cooley Insurance Briefs, 2481; Vance on Insurance, 307. And if it be conceded that the acts of Mr. Grubbs, the assistant secretary, were beyond the powers ordinarily exercised by agents of this character, we think the facts in evidence permit and fully justify the inference that in this instance he was acting by authority property conferred.
It is true, as a general rule, that where an agent has done an act beyond the scope of his agency, neither his declarations nor his acts, nor the act itself, can be received, as evidence of the existence or extent of his powers. See the well-considered case of Daniel v. R. R., 136 N.C. 517. But it is also recognized that under some conditions the acts of an agent, in the course of his employment, may be so open and continued and of such a character as to afford evidence of the authority actually possessed by him. This is very well illustrated in the recent case of Powell v. Lumber Co.,168 N.C. 632. In that case a company, engaged in constructing a building of considerable proportions in the city of Raleigh, was sued by claimants for material supplied for the building on the orders of the company's agent in charge of the work. It was contended for the company that this agent was only a "foreman on the job," and that the orders were entirely beyond the scope of his authority, real or apparent. It appeared, however, that these orders of the agent, large in amount, extending over a good period of time and for material openly purchased and used in the course of the agent's work, were competent on the issue and sufficient to uphold the conclusion that the agent had actual authority to make the contract sued on. Speaking to the question in that case, the Court said: "While it is true, as held inDaniel v. Coast Line, 136 N.C. 517, and Francis v. Edwards, *Page 54 77 N.C. 271, and other well-considered cases, that neither the existence nor the extent of an agency may be shown by either the declarations or acts of an agent, and by them alone, it is also established that the acts of an agent, in the course of his employment and indicative of authority, may be of such character and circumstance or so often repeated as to permit a fair and reasonable inference that they were approved or knowingly permitted by the principal, and in this way may of themselves become relevant on the question of authority expressly conferred. Newbury v. R. R., 167 N.C. 50;R. R. v. Dickenson, 78 Ark. 783; Lytle v. Bank,121 Ala. 215; Harvester Co. v. Campbell, 43 Tex. Civ. App. 421; Doanv. Duncan, 17 Ill. 272; 31 Cyc. 1662. In this last citation, the principle is thus stated: `As a general rule, the fact of agency cannot be established by proof of the acts of the pretended agent, in the absence of evidence tending to show the principal's knowledge of such acts or assent to them. Yet when the acts are of such a character, and so continued, as to justify an inference that the principal knew of them and would not have permitted the same if unauthorized, the acts themselves are competent evidence of agency.'"
The facts in evidence, as accepted by the referee and the court below, showing, as stated, an open and continuous exercise of the power claimed on the part of the agent during the entire life of the contract, with eight resident vice-presidents of the company living in the city, all capable and alert attorneys and good business men, and with a special representative of the company coming to look over the matter, at least once, while the contract was in the course of performance, would in any event bring the present case within the principles of the above decision and others of like purport and justify the conclusion that the agent, in this instance, acted by authority duly conferred; that the delay complained of was at his request, and the company having authorized and received the benefits of his action is not in a position to rely or insist upon such delay as a defense.
We find no error in the proceedings, and the judgment below must be
Affirmed.
Cited: Ingold v. Hickory, 177 N.C. 617; Dixon v. Horne, 180 N.C. 587;Hunsucker v. Corbitt, 186 N.C. 503; Bobbitt v. Land Co., 191 N.C. 328;Brick Co. v. Gentry, 191 N.C. 639, 641; Electric Co. v. Deposit Co.,191 N.C. 656; Bizzell v. Mitchell, 195 N.C. 487, 489; Bank v. Sklut,198 N.C. 593; Commercial Solvents v. Johnson, 235 N.C. 241. *Page 55 
(53)