Civil action to recover for materials furnished by plaintiff to a subcontractor and used in the construction of a public school building.
The purpose of the suit is to hold the Fidelity and Deposit Company of Maryland liable for the claim of the plaintiff by reason of a $60,000 bond executed to the Reidsville Graded School Committee to save it harmless, together with the materialmen and laborers, from loss due to any failure of the principal contractor to complete a public school building at Reidsville, N.C. and to pay for all labor done and materials furnished thereon, in accordance with the terms of a written contract.
Upon denial of liability, and issues joined, there was a verdict and judgment for plaintiff in the sum of $981.00 with interest and costs, from which the Fidelity and Deposit Company of Maryland appeals, assigning errors.
On 1 June, 1922, L. B. Flora Co., Inc., contractor, entered into a written agreement with the Reidsville Graded School Committee for the erection of a public school building at Reidsville, N.C. in which it was stipulated, among other things, that "the contractor shall and will provide all the materials and perform all the work" necessary for the erection of the said school building; and on the same day, for a valuable consideration, the Reidsville Graded School *Page 655 
Committee took from the contractor, as principal, and the Fidelity and Deposit Company of Maryland, as surety, a bond in the sum of $60,000 to insure the faithful performance of said contract, the condition of the bond being as follows: "Now, therefore, if the said L. B. Flora Company, Inc., shall well and truly perform all the conditions therein set out in all particulars, and particularly shall pay for all labor done on, and all material and supplies furnished for said work, then this obligation to be void; otherwise to remain in full force and virtue."
Thereafter, on 12 June, 1922, the general contractor sublet a portion of the work on the building, to wit, the installation of the electric-time equipment and fire-alarm system, to the Wells Electric Company, which said company, in turn, on 2 August, 1922, purchased from the plaintiff certain fixtures and materials for use in equipping the building with an electric clock and fire-alarm system as called for in the building contract.
There is evidence tending to show that the general contractor, as well as the supervising architect, had knowledge or were advised, though not formally notified, of the fact that the plaintiff was supplying the Wells Electric Company with certain materials for use in executing its part of the work.
The general contractor made payments, from time to time, to the Wells Electric Company, for its part of the work, and on 13 August, 1923, a complete settlement was had, the general contractor paying the Wells Electric Company in full for installing in said building the electric-time equipment and fire-alarm system, as called for by the building contract.
In January, 1924, about five months after its settlement with the general contractor, the Wells Electric Company made an assignment for the benefit of its creditors. Immediately following, the plaintiff called upon L. B. Flora Company, the general contractor, to pay its claim for materials furnished and used in the construction of the public school building at Reidsville. Up to this time the plaintiff had only looked to the Wells Electric Company for payment, and had taken its ninety-day trade acceptance for the amount due as a matter of business convenience. Payment was refused by the general contractor. This suit is to recover on the bond.
On motion of the Reidsville Graded School Committee, judgment of nonsuit was entered as to it, and correctly so, under authority of Noland Co. v.Trustees, 190 N.C. 253. The appeal presents only the case of the surety company.
It is conceded by all the parties that the bond in question was taken and given in view of the provisions of C.S., 2445, as amended by chapter 100, Public Laws 1923, requiring every county, city, town or *Page 656 
other municipal corporation, which lets a contract for building, repairing or altering any building, public road or street, to take from the contractor of such work (when the contract price exceeds $500.00) a bond, with one or more solvent sureties, before beginning any work under the contract, payable to said county, city, town or other municipal corporation, and conditioned "for the payment of all labor done on and materials and supplies furnished for the said work," and upon which suit may be brought for the benefit of laborers and materialmen having claims.Warner v. Halyburton, 187 N.C. 414.
The statute, as amended, provides that every bond given to any county, city, town or other municipal corporation, for the building, repairing or altering of any public building, public road or street, as required by this section, "shall be conclusively presumed to have been given in accordance therewith, whether such bond be so drawn as to conform to the statute or not, and this statute shall be conclusively presumed to have been written into every such bond so given." It is further provided in the amended law that only one action may be brought on such bond, all claimants to be duly notified, which was done in the instant case, and if the aggregate sum exceed the amount of the bond, the payments are to be prorated. The surety is also allowed, by paying into court in such suit the full amount of the penalty of the bond, to be relieved from any other or further liability thereon.
The principle is well established by many authoritative decisions, here and elsewhere, that in determining the surety's liability to third persons on a bond given for their benefit and to secure the faithful performance of a building contract as it relates to them, the contract and bond are to be construed together. Mfg. Co. v. Andrews, 165 N.C. 285. And in application of this principle, recoveries on the part of such third persons, usually laborers and materialmen, even when not expressly named therein, are generally sustained where it appears, by express stipulation, that the contractor has agreed to pay the claims of such third persons, or where by fair and reasonable intendment their rights and interests were being provided for and were in the contemplation of the parties at the time of the execution of the bond. Lumber Co. v. Johnson, 177 N.C. 44. The obligation of the bond is to be read in the light of the contract it is given to secure, and ordinarily the extent of the engagement, entered into by the surety, is to be measured by the terms of the principal's agreement.Brick Co. v. Gentry, ante, 636, and cases there cited.
Here, by the express stipulation of the contract and under the provisions of the bond, it is clear, we think, that the claims of laborers, doing work on the building, and of materialmen, furnishing material *Page 657 
and supplies for said work, were not only being provided for and were in the contemplation of the parties at the time of the execution of the contract and bond, but that they also come directly within the terms of the statute governing the matter. Ingold v. Hickory, 178 N.C. 614; Hill v.Amr. Surety Co., 200 U.S. 197.
It is provided in C.S., 2445, that "any laborer doing work on said building and materialman furnishing material therefor and used therein," still have "the right to sue on said bond, the principal and sureties." This language is quite similar to that used in U.S. Comp. St., 1913, sec. 6923, and in Hill v. Amer. Surety Co., 200 U.S. 197, the Supreme Court of the United States held the Act of Congress and the bond given thereunder sufficient to cover claims of materialmen furnishing material and supplies to a subcontractor. In the course of an elaborate opinion dealing with the purpose and intent of the statute, Mr. Justice Day said:
"If literally construed, the obligation of the bond might be limited to secure only persons supplying labor or materials directly to the contractor, for which he would be personally liable. But we must not overlook, in construing this obligation, the manifest purpose of the statute to require that material and labor actually contributed to the construction of the public building shall be paid for and to provide a security to that end. Statutes are not to be so literally construed as to defeat the purpose of the Legislature. . . . There is no language in the statute nor in the bond which is therein authorized limiting the right of recovery to those who furnish material or labor directly to the contractor, but all persons supplying the contractor with labor or materials in the prosecution of the work provided for in the contract are to be protected. The source of the labor or material is not indicated or circumscribed. It is only required to be `supplied' to the contractor in the prosecution of the work provided for. How supplied is not stated, and could only be known as the work advanced and the labor and material are furnished.
"If a construction is given to the bond so limiting the obligation incurred as to permit only those to recover who have contracted directly with the principal, it may happen that the material and labor which have contributed to the structure will not be paid for, owing to the default of subcontractors and the manifest purpose of the statute to require compensation to those who have supplied such labor or material will be defeated. We cannot conceive that this construction works any hardship to the surety. . . . It is easy for the contractor to see to it that he and his surety are secured against loss by requiring those with whom he deals to give security by bond, or otherwise, for the payment of such persons as furnish work or labor to go into the structure. *Page 658 
In view of the declared purpose of the statute, in the light of which this bond must be read, and considering that the act declares in terms the purpose to protect those who have furnished labor or material in the prosecution of the work, we think it would be giving too narrow a construction to its terms to limit its benefits to those only who supply such labor or materials directly to the contractor."
We have quoted at length from this opinion because it is an apt and clear exposition of our own statute. The reasoning of that case controls here. The language of the Federal Act is no stronger than the language used in our own statute. Such statutes are enacted in the exercise of a sound public policy. The contractor gets the benefit of the work done and materials furnished, and the statute requires that he pay for them, to the end that public works may not be erected by the use of labor and materials belonging to others. Speaking to the policy of the law in this respect,Dean, J., in Philadelphia v. Stewart, 201 Pa., 526, said:
"Seldom are contractors for large public works able of themselves to furnish the labor and material necessary to the completion of their contracts; in nearly every case they rely on many subcontractors and materialmen to furnish different kinds of mechanical skill and labor, also material, such as stone, brick, lumber, glass, and iron; these have nothing on which to rely for payment except the honesty and ability of the principal contractor. If the contractor of himself do not inspire confidence among these, who must be subordinate to him, his ability in many cases to bid for large work must be weakened or altogether destroyed; as a necessary consequence, competition for work disappears, in large measure, and there follows a monopoly to the few contractors of large capital, with the inevitable result of exorbitant prices. Every one knows the city will pay the principal contractor, but will he pay his subcontractors and materialmen, whether he makes or loses on his contract? is the question with them."
Nor can the surety complaint at this holding, because when a surety executes a bond in compliance with a statute requiring it, he knows that such statute enters into and becomes a part of the undertaking. House v.Parker, 181 N.C. 40; Hardware Co. v. Liability Co., 178 Cal. 252;Cleveland Metal Roofing Co. v. Gospard, 89 Ohio St. 185, reported in 39 Ann. Cas., with valuable note.
The acceptance by the plaintiff of a ninety-day trade acceptance for the amount due from the Wells Electric Company, as a matter of business convenience, is not a bar to its right to recover on the bond. Guaranty Co.v. Pressed Brick Co., 191 U.S. 416.
In the instant case the general contractor agreed to provide "all the material and perform all the work," required for the erection of the *Page 659 
building, and to "pay for all labor done on, and all material and supplies furnished for said work." These provisions, read in the light of the statute, look to the protection of those who furnish the labor and materials provided for in the contract, and not to the particular contract or engagement under which they are supplied. If the general contractor sees fit to let a portion of the work to a subcontractor, who employs labor and buys materials which are used to carry out and fulfill the engagement of the original contractor, the principal contractor is thereby furnished with the labor and materials for the fulfillment of his engagement as effectually as he would have been had he directly hired the labor or bought the materials.
This interpretation finds support generally in the decisions of other jurisdictions. Multnomah County v. U.S. F. G. Co., 87 Or. 205; ColumbiaCounty v. Consolidated Contract Co., 83 Or. 258; Crane Co. v. Md. Cas.Co., 102 Wn. 66; Haakinson B. Co. v. McPherson, 182 Iowa 477;Hardware Co. v. Aetna Acc. Liability Co., 178 Cal. 252; Associated OilCo. v. Commary-Peterson Co., 32 Cal.App. 586; School District v. Hallock,86 Or. 692; Oliver Const. Co. v. Williams, 152 Ark. 419.
We conclude that the material and supplies furnished by the plaintiff in the instant case were within the obligation of the surety on the bond, and in this view the verdict and judgment must be upheld.
No error.