THE NATIONAL EXCHANGE BANK OF CHESTER, SOUTH CAROLINA, v. ABRAHAM SKLUT AND MORRIS SKLUT, TRADING AS A. SKLUT & COMPANY.

(Filed 9 April, 1930.)

**1. Principal and Agent C b—Evidence of agent's express or implied authority to draw drafts on principals held sufficient.**

Where there is evidence tending to show that the defendants as partners authorized their alleged agent to purchase furs and hides without furnishing the money to pay for them, and that in the course of business the agent gave numerous personal checks therefor which were covered by his drafts on the alleged principals which were paid by them, in an action by the bank accepting the drafts, to recover on later drafts which the defendants refused to pay, denying the agency and partnership, the evidence of agency and of express or implied authority to execute and nego-

tiate the drafts on the principals is held sufficient to be submitted to the jury and sustain the verdict in plaintiff's favor. The question of ratification or estoppel does not arise on this appeal.

2. **Same — Admissions of agent are admissible against the principal when a part of the res gestae.**

The fact of agency must be proven *aliunde* the admissions of the agent, but, the agency being proven, admissions by the agent relating to the business at hand are admissible against the principal when the admissions may be deemed a part of the *res gestæ.*

3. **Principal and Agent C e—Evidence of principal's liability held sufficient although there was evidence that third party was looking to agent.**

While the declarations, made by a third party dealing with the agent, that it did not care who the principal was or that it was satisfied with the credit of the agent is evidence, but not conclusive, against the liability of the principal, in this case *held:* there was sufficient evidence of the principal's liability to be submitted to the jury.

APPEAL by defendants from *Schenck, J.,* at February Term, 1930, of FORSYTH. Affirmed.

The allegations of plaintiff are to the effect that it is engaged in the general banking business in Chester, S. C., and operating in accordance with United States Banking Law. That defendants during February, 1928, and prior thereto, employed one V. B. Campbell as their agent and buyer to represent them in the purchase of furs and hides and to draw drafts on defendants, through plaintiff's bank to pay for same; this was done to facilitate the purchase and for the accommodation of defendants. The proceeds of the drafts were credited to the account of said Campbell, who paid out the money in the purchase of furs and hides for defendants, in accordance with the instructions from defendants. That in February, 1928, drafts amounting to $2,950 were so credited to Campbell's account, who paid the amount out for furs and hides for and on behalf of defendants, which were shipped by Campbell to defendants. The said drafts were forwarded to defendants through correspondence for payment by defendants who refused to pay same. Morris Sklut answering denied the material allegations of the complaint and denied that he was a partner in the business of Abraham Sklut & Co. Abraham Sklut answering denied that there was a partnership existing between Morris and Abraham Sklut and denied the allegations of the complaint.

There was evidence introduced by plaintiff sustaining the allegations of the complaint. For thirteen months prior the course and dealing between the parties were as set forth in the complaint. The drafts were in words and figures—a copy of one is as follows:

"$458.73.                                                    No. 1.

A. SKLUT & Co.

Dealers in

Hides, Skins, Tallow, Raw Furs, Wool & Bees Wax
Winston-Salem, N. C.

NP-67-127
Check No. 2969                    Post Office, Chester, S. C.

Date: 21 Jan., 1927.

Pay to the order of V. B. Campbell Four Hundred Fifty-
eight and 73/100 Dollars, Value Received, and Charge to
Account of A. Sklut & Co.

Through the Peoples National Bank,
Winston-Salem, N. C.                    V. B. CAMPBELL, Buyer."

These were duly endorsed and were paid by defendants, except the
ones sued on in this action.

During the thirteen months approximately $130,000 of drafts were
paid by defendants in the manner set forth in the complaint. The
drafts cashed prior to the one in controversy and paid by the defendants
were 427. The testimony of V. B. Campbell tended to sustain the alle-
gations of the complaint.

An unsigned $1,000 bond was introduced in evidence by plaintiff and
sent by defendants to said Campbell, in part, as follows:

"The condition of the above obligation is such, that whereas the above-
named Sklut and Company have in their employ the above-named prin-
cipal and employee whose duties are:

1. To buy hides.

2. To buy raw furs.

That, whereas, the said employee pays for said purchases by check
and in return draws a draft against the above-named firm, in his favor.

Now, therefore, the condition of the above obligation is such that if
the above bounden, V. B. Campbell, and ........ his surety, shall well and
truly, save, keep and bear harmless and indemnify the said A. Sklut and
Company against any justifiable claims which the said firm may make
which may arise by reason of any shortage in weight, misrepresenta-
tions, infidelity, or costs in connection with suits ........ then this obliga-
tion is to be void, else to remain in full force and virtue."

Campbell testified, in part: "All of those checks are for hides and
furs, and they were all shipped to A. Sklut & Company, not paid. Mr.
Sklut asked me how I arranged my handling of these. I told him I left
them there, signed, at the bank, and that I wired or phoned as to the

amount; wired or phoned the National Exchange Bank, or Mr. McKin- .
nell (cashier of plaintiff's bank), personally."

The issues submitted to the jury and their answers thereto, were as
follows:

"1. Was V. B. Campbell the agent and employee of A. Sklut & Com-
pany, as alleged in the complaint? Answer: Yes.

2. Did the defendant, A. Sklut & Company, expressly or by implica-
tion, authorize V. B. Campbell to execute and negotiate to the plaintiff
the drafts mentioned and described in the complaint? Answer: Yes.

3. Has the defendant satified the acts of V. B. Campbell in executing
and negotiating the said drafts through the plaintiff bank? Answer:
.............

4. Is the defendant estopped to deny the existence of authority to
V. B. Campbell to negotiate the drafts through the plaintiff bank?
Answer: .............

5. What amount, if any, is the plaintiff entitled to recover of the
defendant? Answer: $2,957.20, with interest."

Judgment was rendered on the verdict, and appeal taken to the Supe-
rior Court of Forsyth County. Exceptions and assignments of error
were duly made and on appeal to the Superior Court the exceptions and
assignments of error were overruled. Defendants duly made exceptions
and assignments of error and appealed to the Supreme Court.

*J. M. Wise, Craige & Craige, Ingle & Rucker for plaintiff.*
*Moses Shapiro and Ira Julian for defendants.*

CLARKSON, J. The defendants, at the close of plaintiff's evidence and
at the close of all the evidence, made motions for judgment as in case
of nonsuit. C. S., 567. The Forsyth County Court overruled the
motions, and on appeal to the Superior Court the ruling of the Forsyth
County Court was sustained, and in this we can see no error. We think
the evidence sufficient to be submitted to the jury.

It is well settled that "Admissions by agents, made while doing acts
within the scope of the agency, and relating to the business in hand, are
admissible against the principal when such admissions may be deemed a
part of the *res gestæ,* but such admissions are not admissible to prove
the agency; the agency must be shown *aliunde* before the agent's admis-
sions will be received." Lockhart's Handbook on Evidence, sec. 154,
citing numerous authorities. *Hunsucker v. Corbitt,* 187 N. C., at p. 503.

In *Bobbitt v. Land Co.,* 191 N. C., at p. 328, we find: *"Hoke, J.,* in
*Powell v. Lumber Co.,* 168 N. C., p. 635, speaking to the question, says:
'The general agent is said to be one who is authorized to act for his
principal in all matters concerning a particular business or employment
of a particular nature. Tiffany on Agency, p. 191. And it is the recog-

nized rule that such an agent may usually bind his principal as to all acts within the scope of his agency, including not only the authority actually conferred, but such as is usually 'confided to an agent employed to transact the business which is given him to do,' and it is held that, as to third persons, this real and apparent authority is one and the same, and may not be restricted by special or private instructions of the principal unless the limitations sought to be placed upon it are known to such persons or the act or power in question is of such an unusual character as to put a man of reasonable business prudence upon inquiry as to the existence of the particular authority claimed. *Latham v. Field,* 163 N. C., 356; *Stephens v. Lumber Co.,* 160 N. C., 107; *Gooding v. Moore,* 150 N. C., pp. 195-8; Tiffany on Agency, p. 180, 184, 191, *et seq.* The power of an agent, then, to bind his principal may include not only the authority actually conferred, but the authority implied as usual and necessary to the proper performance of the work intrusted to him, and it may be further extended by reason of acts indicating authority which the principal has approved or knowingly or, at times, even negligently permitted the agent to do in the course of his employment. *Law Reporting Co. v. Grain Co.,* 135 Mo. Rep., p. 10-15; 31 Cyc., 1326-1331.' *Furniture Co. v. Bussell,* 171 N. C., 485; *Ferguson v. Amusement Co., ibid.,* 665; *Brimmer v. Brimmer,* 174 N. C., 439; *Lumber Co. v. Johnson,* 177 N. C., 51; *Cardwell v. Garrison,* 179 N. C., 478; *Strickland v. Kress,* 183 N. C., 536."

In *Pick v. Hotel Co.,* 197 N. C., at pp. 112-13, the following principle is laid down: "Another position of the appellant is this: the appointment of an agent to purchase personal property does not authorize such purchase when the title is retained to secure payment of the agreed price. As no funds were given the agent to pay for the furniture he had the implied power to make the purchase on the credit of the defendant. In *Brittain v. Westall,* 137 N. C., 30, it is said: 'It may be taken as a settled principle in the law of agency that if express authority to buy on a credit is not given to an agent, but he is authorized to make the purchase and no funds are advanced to him to enable him to buy for cash, he is, by implication, clearly authorized to purchase on the credit of his principal, because when an agent is authorized to do an act for his principal, the means necessary for the accomplishment of the act are impliedly included in the authority unless the agent be in some particular expressly restricted.' *Ruffin v. Mebane,* 41 N. C., 507; *Swindell v. Latham,* 145 N. C., 144. In the law of agency this rule also is in force: 'Whenever a principal has placed an agent in such a situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is justified in assuming that such agent is authorized to perform in behalf of his principal the particular

act, and such particular act has been performed the principal is estopped from denying the agent's authority to perform it.' 21 R. C. L., 856."

. The most serious aspect presented on the record, but we think the evidence sufficient to be submitted to the jury, is set forth in the following principle of law: "The fact that the third person (in this instance the bank), declares he does not care who the principal is or that he is satisfied with the credit of the agent (Campbell), is evidence, but not conclusive against the liability of the principal (Sklut)." Amer. Law Inst., Restatement of the Law of Agency, Tentative Draft 4, sec. 376, page 21, *et seq.*

We think the citations of law as above set forth are applicable to the facts in this controversy.

The question of ratification and estoppel does not arise on the appeal, as these issues were not answered by the jury. Any discussion would be academic. From a careful examination of the record, the well prepared and exhaustive briefs of counsel on both sides of the controversy, we see no prejudicial or reversible error. The numerous exceptions and assignments of error made by defendants cannot be sustained. There was sufficient evidence to be submitted to the jury on the issues. They have been decided in plaintiff's favor. The jury decide the facts. In the law we find no error. The judgment of the court below is

Affirmed.