COMMERCIAL SOLVENTS, INC., v. D. A. JOHNSON AND T. L. BAILEY, A PARTNERSHIP TRADING AS WILSON MOTOR PARTS COMPANY.

(Filed 19 March, 1952.)

1. **Principal and Agent § 13c—**

　　Extra-judicial declarations of an alleged agent are not competent to prove the fact of agency or its extent.

2. **Same—**

　　Even when the fact of agency is proved by evidence *aliunde*, extra-judicial declarations of the agent are not competent against the principal unless it also is made to appear by evidence *aliunde* that the declarations were within the actual or apparent scope of the agent's authority.

3. **Principal and Agent § 7a—**

　　A manufacturer's agent whose duties relate solely to promotion of the principal's products among prospective customers of the dealer, has no actual authority to modify the contractual relations between the principal and the dealer.

4. **Principal and Agent § 7b—**

　　The doctrine of apparent authority has no application when the person dealing with the agent has actual or constructive knowledge of the nature and extent of the agency.

5. **Principal and Agent § 13c—Extra-judicial declarations of agent held incompetent in absence of evidence aliunde of authority.**

　　Defendants' evidence was to the effect that they had knowledge, actual or constructive, that the duties of plaintiff's agent related solely to promotional work of plaintiff's goods among defendants' customers, and that his work was actually limited to this phase without any dealings affecting the contractual relations between plaintiff and defendants. *Held:* Extra-judicial declarations of the agent, offered to prove estoppel or waiver of the contractual provisions as to plaintiff's right to terminate the agreement, were properly excluded, since there was no evidence tending to show that the declarations were within the actual or apparent authority of the agent.

6. **Trial § 28—**

　　An instruction that if the jury believe all the evidence in the case it should answer the issue as directed is not a directed verdict, since under

the instruction it is left to the jury to determine whether it believes the evidence.

**7. Trial § 29—**

> While a verdict may not be directed in favor of the party upon whom rests the burden of proof, when all the evidence in the case points one way as the sole inference, the court may instruct the jury that if it believes all the evidence so to answer the issue.

APPEAL by defendants from *Stevens, J.,* and a jury, at October-November Term, 1951, of WILSON.

Civil action to recover an alleged balance due for merchandise delivered to the defendants under consignment contracts.

The plaintiff is a manufacturer of chemical products, including antifreeze compounds and other chemicals used in automobile radiators. The defendants are engaged in the business of selling at wholesale and retail automotive parts, accessories, and supplies. Their place of business is in the Town of Wilson. They have customers and outlets in numerous towns in Eastern North Carolina. For a number of years prior to 24 May, 1948, the defendants had been handling products manufactured by the plaintiff. Two methods were followed by the plaintiff in supplying these products: (1) The anti-freeze compounds—Peak (the permanent type), and Nor'way (the evaporating type)—were furnished to the defendants under separate, though substantially identical written contracts, by which these brands of anti-freeze were delivered to the defendants on consignment, remittances to be made monthly covering sales and disposals for the preceding month. (2) The general line of chemicals—which included radiator stop leak, anti-rust, cleaners, and so forth—was sold outright to the defendants upon their orders as and when needed.

During 1948 and for several years prior thereto there was and had been a general market shortage of the radiator anti-freeze compounds, whereas there was and had been an abundant supply of the plaintiff's general line of chemicals.

The contracts concerning anti-freeze were made in May, 1945, without fixed time for termination. However, each contract contained a stipulation providing that it "may be terminated by either party at any time upon written notice to the other," and that "termination . . . shall not relieve the jobber (defendants) of any of its obligations hereunder."

On 24 May, 1948, the plaintiff elected to terminate these contracts and wrote the defendants that day giving them notice as required by the contracts. The defendants admitted receiving the letter on or about 25 May, 1948.

This action was instituted to recover the sum of $2,006.93 which the plaintiff alleges the defendants owe for consignments of anti-freeze sold prior to termination of the contracts.

The defendants by answer denied the debt and set up a counterclaim against the plaintiff. The gist of the allegations of the counterclaim is that the plaintiff, by reason of representations made and assurances given by one of its agents, waived or became estopped to exercise the privilege of terminating the contracts and became bound to furnish the defendants supplies of anti-freeze for the approaching winter season of 1948-1949, and that the plaintiff's alleged wrongful refusal to so furnish these compounds resulted in substantial damage to the defendants, who were unable, after due diligence, to obtain these goods elsewhere.

The evidence discloses that during the spring of 1948, Herbert R. Snyder (hereinafter referred to as Snyder), was employed by the plaintiff as special representative in Eastern North Carolina to promote the sale of its regular line of chemicals. Snyder reported to the defendants in February or March, 1948, and thereafter worked among the defendants' customers for several days promoting the qualities of these chemicals.

The defendants sought to show by the testimony of numerous witnesses, principally managers of customer-stores, that the plaintiff's agent Snyder, in promoting the sale of the chemicals other than anti-freeze compounds, gave assurances that both lines were being handled by the defendants and that allocations of the scarce anti-freeze compounds would be made available to the trade in proportion to the volume of purchases of the regular chemical line. The proffered testimony was excluded. It would serve no useful purpose to bring forward all that was excluded. The following excerpts will suffice to illustrate the defendants' exceptions:

(1) One customer of the defendants, a store manager, if permitted would have testified: "He (Snyder) said that anti-freeze would continue to be short but that by showing Commercial Solvents Corporation that we could move their related products we stood a much better chance of getting a larger supply of Peak (anti-freeze)." (2) A garage operator, customer of defendants, if permitted would have testified: "He (Snyder) just told us that we would get more anti-freeze the following season. He made us a promise of it." (3) Another customer of the defendants would have testified: "He (Snyder) just told me if we took on the chemical line we would get more anti-freeze." (4) The manager of another customer store, if permitted would have testified: "He (Snyder) showed them (customers of witness) the folder and in each case the customer asked if we would have and did have Peak and Nor'way anti-freeze. He told them that we were the jobbers and would have the complete line." This witness also would have said, if permitted, that as a result of the statements made about anti-freeze some of his customers gave Mr. Snyder orders for chemicals. (5) A salesman from the defendants' store who accompanied Snyder would have said if permitted: "He told me . . . that his job was to promote chemicals but that the amount of chemicals that each jobber

bought would have a direct bearing on the amount of anti-freeze available to that particular jobber."

One of the defendants' salesmen who accompanied Snyder testified that he, the salesman, in the presence of Snyder, took about twenty orders for anti-freeze for delivery the next winter. However, at the time the salesman took these orders for anti-freeze he said the defendants had none in stock. The written contracts then in force between the plaintiff and the defendants governing the sale of anti-freeze compounds contained this provision: "The jobber shall not accept orders for, or commit the Manufacturer to the sale or delivery of, any Nor'way (same provision in Peak contract) in excess of the unsold quantity then in Jobber's custody, or make any representation or warranty in respect of Nor'way (same as to Peak) on behalf of the Manufacturer without the written consent of the manufacturer."

At the close of all the evidence the plaintiff moved for judgment as of nonsuit on the counterclaim. The motion was allowed. Thereupon, in the plaintiff's action the single issue of debt was submitted to the jury. A verdict was returned in favor of the plaintiff in the amount of $2,006.93.

From judgment entered on the verdict, the defendants appealed, assigning errors.

*Chas. B. McLean and Lucas & Rand for plaintiff, appellee.*
*Gardner, Connor & Lee for defendants, appellants.*

JOHNSON, J. The defendants' chief assignments of error challenge the action of the trial court in (1) excluding evidence proffered by the defendants in support of their counterclaim, (2) allowing the motion for judgment of nonsuit on the counterclaim, and (3) the charge of the court on the issue of debt in the plaintiff's action.

1. *The excluded evidence and judgment of nonsuit in respect to the counterclaim.*—The excluded testimony consists of a mass of extrajudicial declarations and statements allegedly made by the plaintiff's agent Snyder, by which the defendants sought to prove that the plaintiff waived the right, or estopped itself, to terminate the consignment contracts under which the defendants had been receiving consignment shipments of anti-freeze compounds.

Conceding, but not deciding, that the excluded testimony may have probative force as tending to establish the facts alleged in the counterclaim, nevertheless it would seem that no sufficient foundation was laid to make this evidence admissible.

While proof of agency, as well as its nature and extent, may be made by the direct testimony of the alleged agent (*Jones v. Light Co.,* 206 N.C. 862, 175 S.E. 167), nevertheless it is well established that, as against the

principal, evidence of declarations or statements of an alleged agent made out of court is not admissible either to prove the fact of agency or its nature and extent. *West v. Grocery Co.,* 138 N.C. 166, 50 S.E. 565; *Parrish v. Mfg. Co.,* 211 N.C. 7, 188 S.E. 817; 1 Meacham on Agency, 2d Ed., Sec. 285.

And in applying this rule, ordinarily the extra-judicial statement or declaration of the alleged agent may not be given in evidence, unless (1) the fact of agency appears from other evidence, and also unless it be made to appear by other evidence that the making of such statement or declaration was (2) within the authority of the agent, or (3) as to persons dealing with the agent, within the apparent authority of the agent. *Salmon v. Pearce,* 223 N.C. 587, 27 S.E. 2d 647; *D'Armour v. Hardware Co.,* 217 N.C. 568, 9 S.E. 2d 12; Am. L. Inst. Restatement, Agency, Vol. 2, Sec. 285; Anno: 3 A.L.R. 2d p. 598. See p. 599, note 6.

When these preliminary factors have been proved by evidence *aliunde,* then evidence of extra-judicial statements of the agent, when otherwise relevant and competent, may be introduced as corroborative of other evidence (*Hester v. Motor Lines,* 219 N.C. 743, 14 S.E. 2d 794; 3 C.J.S., Agency, Sec. 322, p. 280), or as substantive evidence bearing on the main issue in suit as a part of the *res gestæ. Queen v. Insurance Co.,* 177 N.C. 34, 97 S.E. 741; *Lumber Co. v. Johnson,* 177 N.C. 44, 97 S.E. 732; *Miller v. Cornell,* 187 N.C. 550, 122 S.E. 383; *Bank v. Sklut,* 198 N.C. 589, 152 S.E. 697.

It follows, then, that the proffered evidence was properly excluded, unless it appears from the admitted evidence (1) that Snyder was the plaintiff's agent, and (2) that either (a) the excluded statements of Snyder were made within the actual scope of his authority, or (b) that, as to the defendants, the statements were made within the scope of Snyder's apparent authority.

The fact of Snyder's agency and the extent of his authority are shown by his deposition, offered in evidence by the defendants. From this it appears that the scope of his authority was limited to doing sales-promotion work in respect to the plaintiff's line of chemicals. As he put it, he was ". . . to promote the qualities of . . . radiator chemicals," and to do "missionary work with the wholesale jobbers' salesmen there,—Wilson Motor Parts salesmen and their affiliated branches, merely explaining the merits of the Stop Leak, the Anti-Rust, the Quick Flush, the Dry-Ex and the Radiator Cleaner that Commercial Solvents Corporation manufactured . . ." And such is the thread of all the admitted evidence in the case. It all tends to show that Snyder's authority was limited to promotional work, with no evidence being susceptible of the inference that Snyder possessed actual authority to modify the contractual relations between the plaintiff and the defendants.

· This brings us to an examination of the defendants' contention that the excluded statements and declarations of agent Snyder were admissible under the doctrine of apparent authority. Here, again, it must be kept in mind that before this doctrine may be invoked, the apparent authority relied on must be shown by evidence *aliunde.* The controverted extra-judicial statements and declarations may not be used for the purpose of enlarging the agent's authority. *Railroad v. Smitherman,* 178 N.C. 595, mid. p. 599, 101 S.E. 208.

Moreover, since the doctrine of apparent authority rests upon the principle that where one of two innocent parties must suffer, the one must bear the burden who places another in a position to cause loss, it necessarily follows that the doctrine may not be invoked by one who knows, or has good reason for knowing, the limits and extent of the agent's authority. In such case the rule is: "Any apparent authority that might otherwise exist vanishes in the presence of the third person's knowledge, actual or constructive, of what the agent is, or what he is not, empowered to do for his principal." 2 C.J.S., Agency, Sec. 92, p. 1189.

An examination of the record in the light of these controlling principles discloses that the admitted evidence, standing alone, is insufficient to support the inference that, as to the defendants, Snyder had apparent authority to make the statements and declarations shown in the excluded testimony. On the contrary, all the admitted evidence tends to show the defendants knew, or had good reason to know, that Snyder's actual scope of authority was limited to promoting the plaintiff's regular line of chemicals. Neither of the defendants dealt with Snyder at any time on a contractual level. There is no evidence that Snyder ever made personal contact with the defendant Bailey. This defendant did not go upon the witness stand. The other partner, the defendant Johnson, testified to no dealings with Snyder affecting the contractual relations between his firm and the plaintiff corporation. Johnson said that Snyder on arriving introduced himself as being with the plaintiff. "He showed me some samples of chemicals of Commercial Solvents that he was demonstrating . . ." Snyder made no demonstration for Johnson, who said, "I just saw the literature." After this, as the evidence developed in the trial below, Snyder was out in the trade areas promoting the qualities of the plaintiff's line of chemicals, part of the time with one of the defendants' salesmen, but never any more, according to the record, did he make contact with either of the defendants.

Also, the evidence tends to show that all previous contractual dealings were conducted between the defendants themselves and executives of the plaintiff corporation. The record reflects no evidence tending to show that either of the defendants was misled in respect to the scope of Snyder's authority.

· Since the admitted evidence in no aspect supports the inference that Snyder possessed either the actual or apparent authority to waive or modify the existing contractual relations between the parties, error may not be predicated upon the excluded evidence.

The evidence bearing upon the counterclaim, when considered in its light most favorable to the defendants, is insufficient to make out a *prima facie* case. The court below properly allowed the motion for nonsuit.

2. *The charge of the court on the issue of debt.*—It seems to be conceded, and rightly so, that there was sufficient evidence to carry to the jury the plaintiff's case involving the issue of debt. On this phase of the case, the defendants challenge the correctness of this instruction: "The Court instructs you peremptorily if you believe all the evidence in this case that you will answer this issue '$2,006.93 with interest from the 30th of April, 1948.' There it is, gentlemen. Go out and say how you answer it."

Here, the defendants contend that the court in effect directed a verdict for the plaintiff; and that this may not be done in favor of the party who has the burden of proof.

However, the instruction as given left it to the jury to determine whether they believed the evidence. Hence it was not a directed instruction. See *McCracken v. Clark, ante,* 186, and cases there cited.

In the instant case all the evidence tends to show that the plaintiff was entitled to recover the full amount sued for. No evidence was offered *contra,* and defendant D. A. Johnson on cross-examination admitted the correctness of the account.

Ordinarily, where all the evidence points in the same direction, with but one inference to be drawn from it, an instruction to find in support of such inference, if the evidence is found to be true, will be upheld. *Mercantile Co. v. Ins. Co.,* 176 N.C. 545, 97 S.E. 476; *Holt v. Maddox,* 207 N.C. 147, 176 S.E. 261; *Davis v. Warren,* 208 N.C. 174, top p. 177, 179 S.E. 329.

The form of the instruction as given has the sanction of numerous decisions of this Court. *Holt v. Maddox, supra; Davis v. Warren, supra; Nelson v. Ins. Co.,* 120 N.C. 302, bot. p. 304, 27 S.E. 38; *Bank v. Griffin,* 153 N.C. 72, bot. p. 75 and top p. 76, 68 S.E. 919. See, however, *Morris v. Tate,* 230 N.C. 29, top p. 33, 51 S.E. 2d 892, where a more exact formula is given. See also comment of *Stacy, C. J.,* in *Brooks v. Mill Co.,* 182 N.C. 258, mid. p. 260, 108 S.E. 725.

Other exceptive assignments of error (including those relating to the dismissal of the defendants' second counterclaim by judgment of nonsuit), not set out in the defendants' brief, or in support of which no reason or argument is stated or authority cited, are deemed abandoned. Rule 28,

Rules of Practice of the Supreme Court, 221 N.C. 544, at p. 562 *et seq.;* *Dillingham v. Kligerman, post,* 298.

No error.